**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**November 30, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP978**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CV3311

**IN COURT OF APPEALS**
**DISTRICT IV**

---

LCB, LLC AND MADISON GOLF AND DEVELOPMENT GROUP, LLC,

    PLAINTIFFS-APPELLANTS,

  V.

SPECTRUM BRANDS, INC. AND ALLIANZ GLOBAL RISKS US INS. CO.,

    DEFENDANTS,

GENERAL CASUALTY COMPANY OF WISCONSIN,

    DEFENDANT-RESPONDENT.

---

APPEAL from orders of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Order affirmed*; *order reversed and cause remanded for further proceedings.*

Before Kloppenburg, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. LCB, LLC ("LCB") and Madison Golf and Development Group, LLC ("Madison Golf") appeal, arguing that the circuit court erred in declaring, on summary judgment, that their insurer, General Casualty Company of Wisconsin ("General Casualty"), does not have a duty to defend or indemnify LCB regarding counterclaims brought by Spectrum Brands, Inc. ("Spectrum") against LCB.[1] We agree and, therefore, reverse the order granting summary judgment to General Casualty and remand for further proceedings.

## BACKGROUND

¶2 At the heart of this appeal is a coverage dispute between LCB and its insurer, General Casualty, based on the following undisputed facts. The coverage dispute arises out of litigation concerning LCB's agreement to lease commercial property to Spectrum. Spectrum stored lithium on the leased premises, and the

---

[1] We briefly explain the reference in the mandate to "orders of the circuit court." The notice of appeal states that LCB and Madison Golf appeal both an August 2021 order granting summary judgment to General Casualty regarding Spectrum's counterclaims against LCB, and a March 2022 order dismissing LCB and Madison Golf's claims against General Casualty that are unrelated to Spectrum's counterclaims. The March 2022 dismissal order was entered pursuant to a stipulation between the parties for voluntary dismissal. The parties do not make any arguments with respect to that dismissal order; therefore, we affirm that order. The parties' arguments address the August 2021 order, which is related to Spectrum's counterclaims, and the balance of this opinion addresses our reasons for reversing that order.

The insurance policy at issue in this case names Madison Golf as the insured. The relationship between Madison Golf and LCB is unclear, but General Casualty agrees that "LCB, an entity associated with Madison Golf, looks to [the Madison Golf policy] for coverage." Further, although Madison Golf is an appellant along with LCB, the dispute on appeal is between LCB and General Casualty because Spectrum's counterclaims are asserted against only LCB and not Madison Golf. Thus, for convenience, this opinion refers to LCB as the insured and generally refers to only LCB rather than to both LCB and Madison Golf.

lithium exploded when it came into contact with water that entered the premises during historic flooding in August 2018.[2] Spectrum remediated the premises, vacated the premises prior to the lease's termination date, and stopped paying rent. As will be discussed in greater detail below, LCB sued Spectrum, alleging that Spectrum negligently stored the lithium and that Spectrum breached the lease. Spectrum counterclaimed, alleging that LCB breached the lease in various respects, that LCB negligently allowed water to infiltrate the premises, and that Spectrum was constructively evicted. General Casualty moved for summary judgment declaring that it did not have a duty to defend or indemnify LCB regarding Spectrum's counterclaims. The circuit court granted General Casualty's motion.

*I. The Policy.*

¶3      LCB is insured through a commercial general liability policy issued by General Casualty. The policy's initial grant of coverage provides that General Casualty "will pay those sums that [LCB] becomes legally obligated to pay as damages because of … 'property damage'" that is "caused by an 'occurrence.'" Thus, the initial grant of coverage is triggered by property damage that is caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[3] The

---

[2] Lithium, an alkali metal, "reacts[s] vigorously, and often violently, with water to release hydrogen and form strong caustic solutions." *Alkali metal*, BRITANNICA, https://www.britannica.com/science/alkali-metal (last visited Nov. 27, 2023). LCB refers to the chemical reaction as an "explosion" and as an "explosion and/or fire." General Casualty refers to the reaction as an "exothermic reaction." For convenience, we refer to the resulting chemical reaction as an explosion.

[3] The policy also covers damages that the insured has to pay because of "bodily injury" caused by an "occurrence," which is not relevant here.

policy states that General Casualty "will have the right and duty to defend" against any suit seeking damages that the insured would become legally obligated to pay because of property damage caused by an "occurrence."

*II. The Lease.*

¶4 Spectrum leased commercial space from LCB in Middleton beginning in June 2012. Spectrum used the space for battery research and development and stored lithium on the premises. LCB knew this, and the lease requires LCB to take proactive measures to prevent water infiltration: "Landlord shall cause the roof and exterior walls to be inspected annually to protect against water infiltration, it being understood that any water infiltration or leakage will cause substantial damage to Tenant." The lease also requires LCB, "at its sole cost, [to] perform such repairs as may be required to maintain, replace and keep in good repair the exterior portions and structural elements of the Demised Premises." In the event that the premises are damaged, the lease states that LCB is responsible for repairs:

> If the Demised Premises and improvements therein shall be damaged or destroyed by fire or other casualty, then, Tenant shall give prompt written notice thereof to Landlord, and Landlord shall proceed with reasonable diligence to carry out any necessary demolition and shall restore, repair, replace and rebuild the Demised Premises and improvements therein as the same existed prior to the damage at Landlord's own cost and expense.

If repairs are not made, the lease allows for early termination: "If the Demised Premises Improvements are damaged by more than 60% of their aggregate value, Landlord or Tenant shall have the option of terminating the Lease rather than restoring the Demised Premises."

4

*III. The Flooding.*

¶5     In August 2018, as a result of historic rainstorms in the Madison area, the leased premises flooded.  When floodwaters reached the lithium stored on the premises, there was an explosion that damaged the premises and Spectrum's property located thereon.  Spectrum remediated the water damage and residual mold and lithium with the understanding that Spectrum's remediation costs would either be reimbursed or amortized over time in the form of reduced rent.  Spectrum alleged that LCB did not make the additional repairs necessary for Spectrum to reoccupy the premises; therefore, in January 2019 Spectrum terminated the lease and vacated the premises.

*IV. The Ensuing Litigation.*

¶6     LCB sued Spectrum in November 2019.  LCB alleged that Spectrum negligently stored the lithium and that Spectrum breached the lease agreement.  LCB sought to recover for lost rent and for damages to the leased premises.  LCB also sued its insurer General Casualty, alleging that General Casualty breached the terms of LCB's insurance policy by failing to pay LCB pursuant to the policy for the losses that LCB suffered as a result of the flooding and explosion, including lost rent and damages to the building and improvements.

¶7     Spectrum counterclaimed against LCB, alleging that LCB breached the lease by failing to provide dry space, clean up the premises after the flooding and explosion, and carry the required insurance.  Spectrum also alleged that LCB negligently allowed water to infiltrate the premises and that LCB constructively evicted Spectrum.   Spectrum sought to recover damages for the cost of remediating the premises and for property damage caused by the floodwaters, as well as damages resulting from Spectrum's interrupted business operations.

¶8    General Casualty moved for summary judgment declaring that it does not have a duty to defend or indemnify LCB regarding Spectrum's counterclaims. The circuit court granted the motion, concluding that there was no "occurrence" under the policy so as to provide an initial grant of coverage. Specifically, the court determined that there was no "accident" because "the potential damage was completely anticipated." As evidence that the damage was anticipated, the court noted that "Spectrum negotiated a lease with special provisions specifically to prevent the problem which occurred." For the same reason, the court also concluded that General Casualty has no duty to defend because "this is a breach-of-contract case[,] not a negligence or accident case covered by the term 'occurrence.'"[4]

¶9    LCB appeals.

## DISCUSSION

¶10    There are two issues on appeal. The first is whether Spectrum's counterclaims allege that LCB is legally obligated to pay for property damage that was caused by an "occurrence," thereby triggering General Casualty's duty to defend LCB against Spectrum's claims. The second is whether, if General Casualty does have a duty to defend, we should determine the scope of General Casualty's duty to indemnify.

¶11    We conclude that Spectrum's counterclaims against LCB do allege an "occurrence" that triggers General Casualty's duty to defend. However, we do

---

[4] As noted, LCB subsequently dismissed its remaining claims against General Casualty but preserved its right to appeal the circuit court's decision regarding General Casualty's duty to defend and indemnify LCB against Spectrum's counterclaims.

not address General Casualty's duty to indemnify because doing so before LCB's liability has been determined would be premature.

## I. Standard of Review.

¶12    "Summary judgment is properly granted if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law." ***American Fam. Mut. Ins. Co. v. American Girl, Inc.***, 2004 WI 2, ¶22, 268 Wis. 2d 16, 673 N.W.2d 65; *see also* WIS. STAT. § 802.08(2) (2021-22).[5]  We review a decision granting summary judgment de novo.  *See **American Girl***, 268 Wis. 2d 16, ¶22.

¶13    The interpretation of an insurance policy is a question of law that we likewise review de novo.  ***Badger Mut. Ins. Co. v. Schmitz***, 2002 WI 98, ¶50, 255 Wis. 2d 61, 647 N.W.2d 223.  We interpret insurance policies as they would be understood by a reasonable person in the position of the insured.  ***American Girl***, 268 Wis. 2d 16, ¶23.

## II. General Casualty's Duty to Defend.

¶14    Under the policy, General Casualty has a duty to defend LCB against claims involving property damage caused by an "occurrence."  The parties dispute whether Spectrum's counterclaims allege an "occurrence" that triggers General Casualty's duty to defend.[6]  We conclude that they do.

---

[5] All references to the Wisconsin Statutes are to the 2021-22 version.

[6] The parties limit their arguments on General Casualty's duty to defend to whether Spectrum's counterclaims allege an "occurrence," and do not address the issue of whether the occurrence resulted in "property damage."  We limit our analysis accordingly.

¶15    The Commercial General Liability (CGL) policy that General Casualty issued to LCB, like most insurance policies, imposes two main duties:  a duty to indemnify LCB against damages, and a duty to defend LCB against claims for damages.  *See **Johnson Controls, Inc. v. London Mkt.***, 2010 WI 52, ¶28, 325 Wis. 2d 176, 784 N.W.2d 579.  The duty to defend is broader than the duty to indemnify, and "arises when there is arguable, as opposed to actual, coverage under the policy."  ***Id.***, ¶29.  "An insurer has a duty to defend an insured in a third-party suit if the allegations contained within the four corners of the complaint, would, if proved, result in liability of the insurer under the terms of the insurance policy."  ***Wausau Tile, Inc. v. County Concrete Corp.***, 226 Wis. 2d 235, 266, 593 N.W.2d 445 (1999).  "[A] court must liberally construe the allegations contained in the underlying complaint, assume all reasonable inferences from the allegations made in the complaint, and resolve any ambiguity in the policy terms in favor of the insured."  ***Water Well Sols. Serv. Grp. Inc. v. Consolidated Ins. Co.***, 2016 WI 54, ¶15, 369 Wis. 2d 607, 881 N.W.2d 285.  If the alleged facts underlying any of the claims in a complaint (or a counterclaim) trigger an insurer's duty to defend, that duty extends to the entire action.  ***Anderson v. Kayser Ford, Inc.***, 2019 WI App 9, ¶23, 386 Wis. 2d 210, 925 N.W.2d 547.

¶16    General Casualty argues that it is entitled to summary judgment on the ground that there was no alleged "occurrence" triggering its duty to defend because the injuries alleged in Spectrum's counterclaim are economic and actionable in contract.  LCB counters that this reasoning conflicts with our supreme court's decision in *American Girl*.  We agree.

¶17    In that case, American Girl contracted with a general contractor to have a warehouse built.  ***American Girl***, 268 Wis. 2d 16, ¶11.  Because of a subcontractor's inadequate site-preparation advice, once built, the soil under the

warehouse settled dramatically, which caused the warehouse to settle, and it eventually had to be torn down. *Id.*, ¶16. American Girl sued its general contractor, alleging that the subcontractor's negligence caused the general contractor to breach its contract. *Id.*, ¶17.

¶18 The general contractor had a CGL policy that used language identical, in relevant part, to the CGL policy here. *Id.*, ¶¶14, 18, 31, 37; *see also id.*, ¶25 (explaining that "most CGL insurance in the United States is written on standardized forms"). The contractor's insurer sought a declaratory judgment regarding coverage under the CGL policy. *Id.*, ¶18.

¶19 The insurer argued that because American Girl's claim was for a breach of contract, there was no "occurrence." *Id.*, ¶39. Although the ***American Girl*** court agreed that CGL policies do not usually cover claims sounding in contract, the court explained that this was by operation of business risk exclusions rather than the language in the policies' initial grants of coverage.[7] *Id.* The court concluded that it is ultimately the language of the policy that controls, observing: "[T]here is nothing in the basic coverage language … to support any definitive tort/contract line of demarcation for purposes of determining whether a loss is covered by the CGL's initial grant of coverage. 'Occurrence' is not defined by reference to the legal category of the claim." *Id.*, ¶41. The court identified the

---

[7] The court in ***American Girl*** noted some "regrettably overbroad generalizations about CGL policies in our case law" that overlooked that CGL policies do not usually extend to contractual liabilities, not because of language in the initial grant of coverage, but because of language in business risk exclusions. *American Fam. Mut. Ins. Co. v. American Girl*, 2004 WI 2, ¶39, 268 Wis. 2d 16, 673 N.W.2d 65. Here, General Casualty, in arguing that there was no occurrence because Spectrum's claims are based on "contractual liability of the insured for economic loss," relies on the very language from ***Bulen v. West Bend Mutual Insurance Co.***, 125 Wis. 2d 259, 264, 371 N.W.2d 392 (Ct. App. 1985), that the ***American Girl*** court cited as an example of such an "overbroad generalization." *See American Girl*, 268 Wis. 2d 16, ¶40.

soil settlement under the warehouse as an "occurrence," notwithstanding that the resulting injury was actionable in contract. *Id.*, ¶5.

¶20 This court has interpreted *American Girl* to establish that "the circumstances giving rise to a breach of contract or breach of warranty claim may be an 'occurrence' within the meaning of a CGL policy: the analysis focuses on the factual basis for the claim and not on the theory of liability." *Glendenning's Limestone & Ready-Mix Co. v. Reimer*, 2006 WI App 161, ¶25, 295 Wis. 2d 556, 721 N.W.2d 704; *see also* *1325 N. Van Buren, LLC v. T-3 Grp., Ltd.*, 2006 WI 94, ¶58, 293 Wis. 2d 410, 716 N.W.2d 822 ("We have repeatedly rejected the argument that insurance coverage is dependent upon the theory of liability.").

¶21 Accordingly, Spectrum's claims can be for losses that are actionable in contract and still allege an "occurrence"—it is the language of the policy as applied to the factual bases for the claims that controls. Therefore, we next address whether Spectrum's counterclaims allege an occurrence, thus triggering General Casualty's duty to defend.

¶22 The parties dispute what caused the property damage alleged in Spectrum's counterclaims. LCB argues that the flood was an "occurrence." In contrast, General Casualty argues that there was no "occurrence" because "the injury-causing event was LCB's breach of the Lease."

¶23 An "occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Wisconsin courts have defined an "accident," in the context of CGL policies, as "'an event or condition occurring by chance or arising from unknown or remote causes,'" and as "'an event which takes place without one's foresight or expectation.'" *American Girl*, 268 Wis. 2d 16, ¶37 (first quoting WEBSTER'S

THIRD INT'L DICTIONARY OF THE ENGLISH LANGUAGE 11 (2002); and then quoting BLACK'S LAW DICTIONARY 15 (7th ed. 1999)).

¶24 Here, Spectrum's counterclaims allege that there was an "accident," and thus an "occurrence": the leased premises flooded and water came into contact with lithium, causing an explosion.

¶25 Specifically, in a section of Spectrum's counterclaim titled "General Allegations," Spectrum alleges that "the Premises experienced major flooding. As a result … an exothermic reaction occurred in Spectrum's dry room when water came into contact with lithium." Spectrum further alleges that "[t]he flooding and exothermic reaction significantly damaged Spectrum's property, interrupted Spectrum's business, and rendered the Premises uninhabitable." These allegations are incorporated into, and provide the factual basis for, at least some of Spectrum's claims against LCB. For example, Spectrum, in its claim that LCB breached the lease by failing to provide dry space, alleges that "LCB breached its obligations under the Lease to maintain [the premises] in such a manner as to avoid, eliminate, or mitigate water intrusion." And in Spectrum's negligence claim, Spectrum alleges that LCB negligently failed "to maintain [the premises] in a manner that would avoid water infiltration."

¶26 Thus, the alleged occurrence was that the leased premises flooded and water came into contact with lithium, causing an explosion. Wisconsin courts have consistently stated that although conduct that is negligent or a breach of contract cannot constitute an occurrence in itself, it can lead to one. *See, e.g.*, *5 Walworth, LLC v. Engerman Contracting, Inc.*, 2023 WI 51, ¶35, 408 Wis. 2d 39, 992 N.W.2d 31. Here, although LCB's alleged failure to maintain the premises to prevent water intrusion or infiltration cannot be characterized as an

"occurrence" in itself, it allegedly resulted in an event that can be: the leased premises flooded and there was a lithium explosion. Identifying the "occurrence" or "accident" in this manner is consistent with our case law.

¶27 For example, in *Glendenning's*, a general contractor was hired to make improvements to a dairy facility. *Glendenning's*, 295 Wis. 2d 556, ¶4. The clients sued the contractor for negligently making the improvements and for breach of contract, and the contractor's CGL insurer moved for summary judgment declaring that it had no duty to defend or indemnify. *Id.*, ¶¶4, 5. The insurer argued that a breach of contract claim that alleges only negligent conduct does not allege an "occurrence." *Id.*, ¶¶5, 18. We disagreed, stating that "faulty workmanship in itself is not … 'an accident,'" but that "[a]n, 'accident' may be caused by faulty workmanship." *Id.*, ¶39; *see also id.*, ¶18 n.5 (assuming that the phrase "faulty workmanship" "mean[t] work or conduct that [was] 'negligent'").

¶28 Our decision in *Glendenning's* was informed by the analyses in *American Girl* and in *Kalchthaler*, 224 Wis. 2d 387, 591 N.W.2d 169 (Ct. App. 1999). *Glendenning's*, 295 Wis. 2d 556, ¶29. In *American Girl*, our supreme court identified the "occurrence" as the soil settlement under the warehouse rather than as the subcontractor's rendering of faulty site-preparation advice. *American Girl*, 268 Wis. 2d 16, ¶5; *Glendenning's*, 295 Wis. 2d 556, ¶26. In *Kalchthaler*, when windows that were negligently installed by a subcontractor leaked, damaging drapery and wallpaper, we identified the occurrence as the leaking of the windows rather than as their improper installation. *Kalchthaler*, 224 Wis. 2d at 397. Just as the faulty or negligent work in these cases could not constitute an "occurrence" but could lead to one, LCB's alleged failure to maintain the premises is not an occurrence, but the flooding of the premises that resulted is.

¶29    Our decision in *Henshue Construction, Inc. v. Terra Engineering & Construction Corp.*, No. 2012AP1038, unpublished slip op. (WI App May 9, 2013), also informs our conclusion in this case.  Henshue was subcontracted to excavate for a system of steam pits.  *Id.*, ¶¶1, 6.  While excavating, Henshue cut a storm sewer pipe and, believing that the pipe carried little storm water runoff, did not take measures to divert runoff.  *Id.*, ¶7.  Henshue was mistaken.  *Id.*  The pipe carried storm water runoff from a large parking lot, and heavy rains that fell during the project flooded Henshue's excavations and existing steam pits, causing extensive damage.  *Id.*, ¶8.  Henshue sought coverage under its GCL policy.  *Id.*, ¶9.

¶30    A jury found that Henshue had breached the subcontract by failing to properly perform the contracted work, and on appeal, Henshue's CGL insurer argued that there was no coverage because there had been no "occurrence."  *Id.*, ¶¶9, 10, 14.  We disagreed, and "conclude[d] that the flooding event was an accident and thus an 'occurrence.'"  *Id.*, ¶62.  We reasoned that "Henshue did not anticipate that its work would result in flooding that would cause damage, and thus the flooding event was an accident and an occurrence requiring coverage under the policy."  *Id.*  Similarly, here LCB did not anticipate that, despite whatever precautions it took to prevent water infiltration on the premises, a severe flooding event would nevertheless cause damage; thus, the flooding was an accident and an occurrence triggering General Casualty's duty to defend.

¶31    Recently, our supreme court stated, "The lesson from our case law examining [CGL] policy language is this:  faulty workmanship is not an occurrence, but faulty workmanship can lead to an occurrence that causes property damage."  *5 Walworth, LLC*, 408 Wis. 2d 39, ¶35.  There, a homeowner hired a general contractor to install a swimming pool, which cracked and leaked.  *Id.*, ¶¶8-

9. The homeowner sued the contractor for (among other things) negligence and breach of contract, and the contractor sought coverage under its CGL policy. *Id.*, ¶¶10-12. The court stated that "[t]he improper installation of the shotcrete and the incorrect placement of the steel reinforcing bars are not enough on their own to constitute an occurrence," but that "[t]he [resulting] cracks, leakage, and soil damage could constitute accidents." *Id.*, ¶36.

¶32 Here, LCB's alleged failure to maintain the premises to prevent water intrusion or infiltration is analogous to the conduct in the foregoing cases. *See Wisconsin Pharmacal Co. v. Nebraska Cultures of Cal., Inc.*, 2016 WI 14, ¶55, 367 Wis. 2d 221, 876 N.W.2d 72 (stating that although a breach of contract, by itself, is not an occurrence, "a breach of contract may give rise to property damage caused by an 'occurrence'"), *overruled on other grounds by 5 Walworth*, 408 Wis. 2d 39. LCB's alleged failure to maintain the premises cannot be characterized as an "occurrence" in itself, but it allegedly resulted in an unexpected and injurious event that can be: the leased premises flooded and water came into contact with lithium, causing an explosion.[8]

¶33 General Casualty argues that the flooding that caused the explosion was not an accident because "[t]he harm was anticipated or expected, hence the specific contractual provisions guarding against this harm." The correct inquiry, however, is not whether the resulting harm could have been anticipated or

---

[8] General Casualty attempts to distinguish this line of cases by arguing that, whereas these cases involved faulty workmanship that led to an accident, "LCB's alleged breach of Lease did not cause the flood." However, Spectrum's counterclaim does not allege that LCB's alleged breach of the lease caused the August 2018 rain event or the attendant widespread flooding; rather, Spectrum's counterclaim alleges that LCB's failure to maintain the premises resulted in the premises flooding, which, as explained above, constitutes an accident or occurrence.

expected, but instead, whether the event that caused the harm was. *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 86, ¶40, 311 Wis. 2d 492, 753 N.W.2d 448 ("[I]t is the causal event that must be accidental for the event to be an accidental occurrence."). Therefore, that LCB and Spectrum knew that the lithium could react with water and explode does not mean that when it allegedly did so, there was no accident. The question is whether the water's entry into the building was an accident. Just as in *Kalchthaler*, in which there was an accident when the windows leaked, here, Spectrum's counterclaim alleges that there was an accident when the premises that LCB rented to Spectrum flooded. *See Kalchthaler*, 224 Wis. 2d at 397.

¶34　Accordingly, based on the well-established precedent discussed above, we conclude that Spectrum's counterclaims do allege an "occurrence" and that General Casualty thus has a duty to defend.[9]

*III. General Casualty's Duty to Indemnify.*

¶35　The circuit court determined that General Casualty had no duty to indemnify, which necessarily followed from its determination that General Casualty had no duty to defend. *See Johnson Controls*, 325 Wis. 2d 176, ¶29 (stating that an insurer's duty to defend is broader than the duty to indemnify).

---

[9] Normally, having decided that the policy grants initial coverage for the allegations contained in Spectrum's counterclaims, we would next consider whether any exclusions would relieve General Casualty of its duty to defend. *See Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶16, 369 Wis. 2d 607, 881 N.W.2d 285. General Casualty, however, has not argued, either on appeal or before the circuit court, that any exclusions apply; therefore, we do not address the issue. *See State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994) ("We will not decide issues that are not … briefed."); *see also 5 Walworth, LLC*, 408 Wis. 2d 39, ¶36 (declining to address whether policy exclusions precluded coverage when the insurer did not argue that they did).

The parties dispute whether, having concluded that General Casualty has a duty to defend, we should address the scope of General Casualty's duty to indemnify, as General Casualty requests.

¶36 We do not address the scope of General Casualty's duty to indemnify because doing so before LCB's liability has been determined would be premature. *See General Cas. Co. of Wis. v. Hills*, 209 Wis. 2d 167, 176 n.11, 561 N.W.2d 718 (1997) (stating, after concluding that an insurer had a duty to defend against a third-party suit, that "the duty to indemnify issue must await resolution of the [underlying third-party] claim"); *Reid v. Benz*, 2001 WI 106, ¶19, 245 Wis. 2d 658, 629 N.W.2d 262 ("The duty to indemnify … arises when a claim is shown to be within the parameters of the terms of the policy … *and* the insured is adjudged liable.").

## CONCLUSION

¶37 For the foregoing reasons, we affirm the circuit court's order, entered pursuant to the parties' stipulation, dismissing LCB's claims against General Casualty for the losses it suffered as a result of the flooding event. We reverse the court's order granting summary judgment to General Casualty regarding its duty to defend LCB against Spectrum's counterclaims and we remand for further proceedings.

*By the Court.*—Order affirmed; order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.