Jeremy Hoffman, Plaintiff-Respondent,
v.
Midwest Motors, LLC and Paul Sabaska, Defendants-Appellants.
2006AP2207
Court of Appeals of Wisconsin, District III.
August 23, 2007.
Before Dykman, Vergeront and Bridge, JJ.
¶ 1 DYKMAN, J.
Paul Sabaska and his company, Midwest Motors, LLC (Sabaska) appeal from an order denying Sabaska's motion for summary judgment and from a judgment following a jury verdict awarding Jeremy Hoffman $200,000 in Hoffman's breach of contract claim against Sabaska. Sabaska contends that the circuit court erred in denying his motion for summary judgment because the alleged contract between Sabaska and Hoffman was indefinite and therefore unenforceable. Sabaska contends that the circuit court erroneously submitted the question of definiteness to the jury, instead of determining it as a matter of law. Sabaska argues that he is therefore entitled to a new trial in the interest of justice because the real controversy was not tried, and also because the damages award was perverse. We conclude that the contract between Sabaska and Hoffman was definite and therefore enforceable. Because we and the jury reached the same conclusion, even if the trial court erred by submitting the question of definiteness to the jury, the error is harmless. Finally, because the jury award was supported by the record, we decline to award Sabaska a new trial in the interest of justice. Accordingly, we affirm.

Background
¶ 2 The following facts are taken from trial testimony. Paul Sabaska started his own trucking business, Midwest Express,[1] in August 2000. The business consisted of two trucks owned by Sabaska, one of which he drove and the other of which was driven by another driver, and a third truck that was leased and driven by another driver.
¶ 3 In the months following Sabaska's founding of Midwest Express, Sabaska became acquainted with Jeremy Hoffman, who was also a truck driver and who owned his own truck, and the two began talking about going into business together. In February 2001, Sabaska and Hoffman met at Hoffman's home and drafted a contract, which Hoffman's wife typed. Sabaska and Hoffman signed the contract and Hoffman's wife signed as a witness. The contract reads as follows:
This is an agreement made on Monday February 26, 2001 between Paul H. Sabaska and Jeremy J. Hoffman.
Paul Sabaska agrees to give 49% of MidWest Express to Jeremy Hoffman if said conditions are met.
(1) Jeremy must solicit and secure one freight account with in seven months of above date.
(2) Jeremy must provide three power units to MidWest Express within a seven-month period.
(3) If these conditions are met Paul will release 49% of MidWest Express after seven months from the above date.
¶ 4 Hoffman then began driving and soliciting for Sabaska. Hoffman continued to work for Sabaska until June 2004, when Hoffman submitted his resignation after a dispute arose between the two over whether Hoffman had met the terms of their contract. Hoffman then brought this action against Sabaska for breach of contract.[2] Sabaska moved for summary judgment, arguing that the contract was too indefinite to enforce. The court denied the motion because it found there were issues of material fact precluding judgment. A jury found that the contract was definite enough to be enforceable, and awarded Hoffman $200,000 in damages. Sabaska appeals from the summary judgment order and the jury verdict.

Standard of Review
¶ 5 We review a grant or denial of summary judgment de novo, applying the same methodology as the circuit court. Green Spring Farms v. Kersten, 136 Wis. 2d 304, 316-17, 401 N.W.2d 816 (1987). Summary judgment is appropriate only if the submissions on summary judgment establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2005-06).[3]
¶ 6 "A circuit court's decision to submit a question to the jury is clearly erroneous if it is a question of law." K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc., 2007 WI 70, ¶30, ___ Wis. 2d ___, 732 N.W.2d 792. Whether an issue is a question of law is also a question of law we decide independently. State v. Byrge, 2000 WI 101, ¶32, 237 Wis. 2d 197, 614 N.W.2d 477. However, we also review claims of circuit court error for whether the error affected the substantial rights of the adverse party. WIS. STAT. § 805.18(2). Thus, we will reverse for circuit court error "only if the result might, within reasonable probabilities, have been more favorable to the complaining party had the error not occurred." Nowatske v. Osterloh, 201 Wis. 2d 497, 507, 549 N.W.2d 256 (Ct. App. 1996).
¶ 7 We review a jury award for whether there is any credible evidence to support it. Ford Motor Co. v. Lyons, 137 Wis. 2d 397, 446, 405 N.W.2d 354 (Ct. App. 1987). We may, within our discretion, grant a new trial if the real controversy was not fully tried or there was a miscarriage of justice. Vollmer v. Luety, 156 Wis. 2d 1, 18, 456 N.W.2d 797 (1990). We may also grant a new trial where the verdict is not supported by the record or the damages award is excessive. WIS. STAT. § 805.15.

Discussion
¶ 8 Sabaska raises three claims of circuit court error, each of which is based on his contention that the contract between Sabaska and Hoffman was too indefinite to be enforceable: that the circuit court erred in denying his motion for summary judgment because there was no factual dispute[4] and the contract was unenforceable as a matter of law;[5] that the circuit court was required to find as a matter of law that the subsequent conduct of the parties did not cure the claimed indefiniteness; and that the court erred in submitting the question of indefiniteness to the jury because the question of indefiniteness is a question of law. We reject each of Sabaska's contentions because we conclude that the contract between Sabaska and Hoffman was definite and therefore enforceable.
¶ 9 A contract is too indefinite to be enforceable if it is not "definite and certain as to its basic terms." Metropolitan Ventures v. GEA Assocs., 2006 WI 71, ¶22, 291 Wis. 2d 393, 717 N.W.2d 58. Indefiniteness, therefore, means that an essential term of the agreement is so vague or indefinite that the agreement is not "definite as to the parties' basic commitments and obligations," thus preventing the formation of a contract. Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co., 206 Wis. 2d 158, 178, 557 N.W.2d 67 (1996). Thus, the issue of definiteness goes to contract formation, because the indefiniteness of an essential term prevents the creation of an enforceable contract. Metropolitan Ventures, 291 Wis. 2d 393, ¶22 n.9. A contract must be sufficiently definite to demonstrate a "mutual assent" by the parties to the contract's terms, even if the parties to the contract did not subjectively agree to the interpretation of those terms when they entered into the contract. Management Computer Servs., 206 Wis. 2d at 178-79. "In order to hold a contract void for indefiniteness, the indefiniteness must reach the point where construction becomes futile." Metropolitan Ventures, 291 Wis. 2d 393, ¶25 (citation omitted).
¶ 10 A contract may be ambiguous without being indefinite. Management Computer Servs., 206 Wis. 2d at 178. "A contract provision is ambiguous if it is fairly susceptible of more than one interpretation," rather than being insusceptible to reasonable interpretation at all. Id. at 177-180. The interpretation of an ambiguous contract requires the use of extrinsic evidence and is a question of fact to be determined by the jury. Id. at 177.
¶ 11 Sabaska argues that the parties' different understandings of the phrases "release [or give] 49% of Midwest Express" and "solicit and secure one freight account" demonstrate that the agreement was so indefinite that it is not enforceable. The problem with Sabaska's argument is that he confuses ambiguity with indefiniteness. While parties may establish ambiguity by asserting contradicting reasonable interpretations of their contract, contradictory testimony does not establish that a contract is void for indefiniteness. Id. at 180-81. This is because "parties do not need to agree subjectively to the same interpretation at the time of contracting" for the contract to be enforceable. Id. Whether there was the required mutual assent between the parties to form a contract "is judged by an objective standard, looking to the express words the parties used in the contract." Id. at 181. Thus, "when parties disagree about their intentions at the time they entered into a contract, the question is one of contract interpretation for the jury, not mutual assent or contract formation." Id. This is necessarily so because "if a disagreement between parties as to their intent could support a claim of indefiniteness, juries would rarely be called upon to interpret a contract, because nearly every contract challenged in court would be void for indefiniteness." Id.
¶ 12 Thus, the fact that the terms in the contract are subject to more than one reasonable interpretation renders it ambiguous, but not necessarily indefinite. To determine whether the contract is indefinite, we must determine whether the contract established the parties' basic commitments and obligations.
¶ 13 Sabaska argues that the contract in this case is analogous to the contract held indefinite in Metropolitan Ventures, 291 Wis. 2d 393. There, the parties entered into an agreement for Metropolitan Ventures to purchase all of the general partnership interests and certain of the limited partnership interests of GEA Associates, contingent on Metropolitan Ventures obtaining financing "on terms satisfactory to Buyer." Id., ¶¶5-6. The court concluded that "[a] financing clause is sufficiently definite if it establishes that the parties agreed to the terms of financing." Id., ¶24. Because the financing clause at issue provided only that the financing was required to be satisfactory to Metropolitan Ventures, there was no way to interpret what Metropolitan Ventures' intent was as to the financing terms. Id., ¶¶24-29.
¶ 14 The contract here is readily distinguishable from the contract in Metropolitan Ventures. Here, the contract is not silent as to the intent of the parties. The two terms Sabaska claims are too indefinite to establish the basic commitments and obligations of the parties do, in fact, establish the basic terms of their agreement. First, we do not agree that the obligation of Sabaska to "release [or give] 49% of Midwest Express" to Hoffman is indefinite. We agree with Sabaska that the form the business would take upon forty-nine percent being released to Hoffman is unclear from the contract itself. However, this goes to contract interpretation, not formation; because the contract makes clear that both parties agreed that the business would be split, fifty-one percent to Sabaska and forty-nine percent to Hoffman, upon completion of the agreed events, the contract establishes a mutual assent as to that basic term of the contract.
¶ 15 Similarly, the requirement that Hoffman "solicit and secure one freight account" is not indefinite. The parties disagreed as to whether that obligation required Hoffman to obtain a written, long-term agreement for an account and the required value of the account, but the absence of those specifications render the provision ambiguous rather than indefinite. The contract establishes a mutual assent to require Hoffman to solicit and secure one freight account. While the parties disagree as to the interpretation that should be given these provisions, we do not agree with Sabaska that their disagreement establishes that no reasonable interpretation of these provisions can be reached.
¶ 16 Our conclusion that the contract is not indefinite disposes of each of Sabaska's claims of circuit court error. Because the contract was definite, the circuit court properly denied summary judgment on Sabaska's claim of indefiniteness. Moreover, because even under a de novo review we conclude that the contract was not indefinite, Sabaska cannot show more than harmless error in his claim that the issue of definiteness should have been decided as an issue of law rather than submitted to the jury. See Glendennings Limestone & Ready-Mix Co. v. Reimer, 2006 WI App 161, ¶¶13-14, 295 Wis. 2d 556, 721 N.W.2d 704 (even assuming error, we will not reverse if party claiming error cannot show his or her rights were substantially affected by the error). Finally, the issue of whether any subsequent conduct by the parties cured any indefiniteness is irrelevant, as we have concluded that there was no indefiniteness to cure.
¶ 17 Next, Sabaska argues that he is entitled to a new trial in the interest of justice. Many of Sabaska's arguments again focus on his claim that the contract is indefinite, and our conclusion to the contrary is dispositive. The only remaining issue is whether the jury award was excessive or not supported by the record. See WIS. STAT. § 805.15. We conclude that the jury award was both supported by the record and within a reasonable limit, and we therefore will not disturb it.
¶ 18 Hoffman's expert witness, Philip Williams, testified that he valued Midwest Express at $522,000, using an income approach. Sabaska's expert, Jeffrey White, testified that he valued Midwest Express at $188,000, using the cost approach. Sabaska concedes that the jury was entitled to accept Hoffman's expert's testimony, and does not challenge the validity of that testimony. Instead, Sabaska argues that the award is perverse because the evidence at trial did not establish Hoffman made any monetary contribution to Midwest Express. He also argues that the jury could not reasonably award Hoffman forty-nine percent of the value it attributed to Midwest Express without specifically finding what the terms of the contract were. We disagree.
¶ 19 There was no requirement within the contract that Hoffman personally invest money into Midwest Express or that his contributions had to generate a certain amount of cash. Sabaska's arguments are really that the contract is ambiguous, and should be interpreted to contain those requirements. This is an issue of contract interpretation, and Sabaska was free to argue as much to the jury. The jury, however, was not required to agree.
¶ 20 Also, as Sabaska concedes, the jury was entitled to value Midwest Express within the range offered by the parties' experts. See State v. Poellinger, 153 Wis. 2d 493, 504, 451 N.W.2d 752 (1990) (credibility of witnesses is for trier of fact to determine). We find no error in the jury's award of $200,000, which is 49% of $408,163, a value within the range offered by the experts. We do not agree that the jury was required to explain this award in further detail. The contract provided that Sabaska would "give" or "release" forty-nine percent of Midwest Express to Hoffman; obviously, the jury interpreted this to mean that Hoffman was entitled to 49% of the value of Midwest Express. There was no need for further explanation. Accordingly, we affirm.
By the Court.Judgment and order affirmed.
NOTES
[1] The name of Midwest Express was later changed. For clarity, we use only the original name of the business.
[2] Hoffman also brought several other claims, but only the breach of contract claim is before us on this appeal.
[3] All references to the Wisconsin Statutes are to the 2005-06 version unless otherwise noted.
[4] At the summary judgment stage, the circuit court declined to determine whether the contract was indefinite, finding that there was a genuine issue of material fact as to whether the subsequent acts of the parties cured any claimed indefiniteness. In his opposition to Sabaska's summary judgment motion, Hoffman submitted an affidavit stating that Sabaska agreed that Hoffman had met the terms of their contract and that he would follow through with his obligation to make Hoffman an official owner of Midwest Express when the timing was right. We agree that this created an issue of material fact, and that summary judgment was thus unavailable to Sabaska at that stage in the proceedings.
[5] The parties dispute the standard of review as to indefiniteness. Hoffman claims indefiniteness may be a question of fact or law, and that we owe deference to the jury's determination, citing Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co., 206 Wis. 2d 158, 178, 557 N.W.2d 67 (1996). Sabaska argues that Metropolitan Ventures v. GEA Associates, 2006 WI 71, ¶22, 291 Wis. 2d 393, 717 N.W.2d 58, overruled Management Computer Services, reformulating indefiniteness as an issue of contract formation and a question of law. We note that, contrary to Sabaska's assertion, Management Computer Services, 206 Wis. 2d at 178, also classifies indefiniteness as an issue of contract formation rather than interpretation. As for any disparity between the cases as to our standard of review, we need not resolve that dispute. Even applying a de novo review, the standard least favorable to Hoffman, we agree with the jury that the contract is definite and enforceable.